### DORMAN BRIDGEMAN *vs.* NATHANIEL EATON.

A general discharge of all demands, naming a great variety, and executed after the time in which an award should be performed, is, *prima facie,* a discharge of the covenants to perform such award.

An action of *covenant broken* will not lie for converting specific property two years after it is awarded to plaintiff; but *trover* is the proper action.

This was an action of *covenant broken,* by the declaration and pleadings in which it appears the plaintiff and defendant, and one Russel Bridgeman, had been dealing as partners ; and, in order to close their dealings, submitted all their matters of partnership, including the division among them of the partnership property on hand, to certain arbitrators, and all signed a writing containing mutual, individual covenants to abide and perform the award. An award was made July 6, 1827, including all matters submitted, and pointing out certain payments, and dividing cattle and some debts among them, adding, " and all the other remaining demands concerning the company shall be for the benefit and sole use of the said *Dorman Bridgeman,* the plaintiff." Then followed an award, that each should release to the other all claims, suits, controversies and demands whatsoever, to the date of said award ; which date was July 6, 1827.

The declaration, after setting forth this award, alleged, as a breach of the defendant's covenant, that there was a contract, by which one Carter was holden to deliver to said company 2500 cedar rails ; that this contract was in the custody of the defendant, and that he was often requested, and especially on the second day of January, 1830, to deliver said contract to the plaintiff ; but he refused, and then delivered it up to Carter, and received the amount, averring that this contract was one of those awarded to the plaintiff.

The defendant pleaded in bar a release dated July 7, 1827, executed to him by the plaintiff, in full of all demands, naming over every thing capable of being named, from the beginning of the world to the day of executing said discharge, to wit, July 7, 1827. To this plea the plaintiff demurred, and the defendant joined in the demurrer.

The county court adjudged this plea insufficient. The defendant excepted to this decision, and the action was brought up to this Court for revision and adjudication.

*Mr. Cushman now argued for the defendant.*—1. In actions of covenant there is strictly no general issue ; for the plea of *non*

*est factum* only puts the deed in issue.—Defendant must plead a release.—1 *Chitty*, 482.

CALEDONIA.
March,
1831.

Bridgeman
*vs.*
Eaton.

2. A release of all demands excludes the party from all actions, or rights of action.—2 *Jac. Law Dic.* 238.

3. A release of all demands discharges a bond payable at a future day.—5 *Jac. L. Dic.* 438 ; *Co. Lit.* 292.

4. The rule, that a release of all demands does not operate as a discharge of covenants *not broken*, does not apply when the right of action does not accrue from the specialty alone; but where the plaintiff must set forth acts to be performed, and aver a non-performance, as in this case.—4 *Dane*, 238 ; *Co. Abr.* 202.

5. The release is executed in fulfilment of the award.

6. The release is a discharge of all claims accruing from the award ; and, therefore, a good defence in this action.

7. If defendant could produce a release of the demand for rails, in particular, it would constitute a good defence : and no less full and efficacious is this release,not only for the rails,but for every other demand whatever.

8. Whatever will operate as a discharge of any demand, arising out of the award, will also discharge all right of action, arising out of the submission.

9. The defendant cannot avoid the effect of his release, by declaring in covenant.

*Mr. Mattocks, for the plaintiff.*—1. The plaintiff's cause of action accrued in January, 1830, when defendant refused to deliver the note on demand, and gave it to Carter to be cancelled, on receiving the amount. This violated the award, which said, " all notes, &c. should be for the sole benefit and control of plaintiff." Strike out this averment, and there is no breach assigned.—The release, therefore, cannot affect the cause of action, which, on the 7th July, 1827, did not exist.

2. It is a maxim of the law, " that a release, and the general words of it, shall be restrained and bound to the intent of the parties."—1 *Swift's Dig.* 300-1 ; 2 *Com. Dig.* 671, and the authorities there cited. The case shows, that it was the intention of the parties to release all claims existing before the award, and such present claims as the award gave them ; but any right growing out of the award could not have been intended to be discharged ; nor any wrongful act of defendant in violation of those rights. Suppose the defendant had long after the release discharged all the demands awarded to plaintiff—was the release prospective

CALFDONIA, enough to shield him ? If plaintiff is barred from this form of ac-
March,
1831. tion, for this injury, he would be from any action for any injury re-

Bridgeman lating to the subject matter of the award. And this discharge, if
vs. the word *covenant* had been used, which is not, would not release
Eaton. a contingent right, nor a personal covenant before breach.—*Ty-
nan* vs. *Bridges, Croke Jas.* 300 ;—*Coke. Lit.* 292, *note* ;—
*Stephens* vs. *Snow.*, 2 *Salk.* 578 ;—*Jacob's L. D.*, *Release* ;—
*Hor's Case, Coke's Rep.* 161.

3. But a demurrer to a plea may recoil. Is the declaration
sufficient? 1. A covenant to two is several, if the interest is seve-
ral. See the doctrine of joint and several covenants, *Exrs. of Cas-
tle* vs. *Clipham*, 1 *Saunders*, 153, *and notes* ;—4 *Dane*, 54.
Covenant is the proper action on a sealed instrument, without pen-
alty, to perform an award.—5 *Dane*, 125. 2. Two were empow-
ered to make the award, and they all assembled and heard the
parties. 3. Defendant covenanted " to stand to and perform"
the award. The ancient case of *Johnson* vs. *Proctor*, and
the leading case of *Browning* vs. *Wright*, 2 *B. & P.* 18,
decide, that "a covenant is to be construed according to the in-
tention of the parties." What was the intention ? Clearly to do
all acts proper to carry the award into effect ; and omit all, which
would deprive the other party of the benefit of the award.—*Ja-
cob's L. D., Covenant* ; 3 *Com. Dig.* 257, 266–9. The form
of the declaration is not reached by this *general* demurrer.

HUTCHINSON, C. J. after stating the case, delivered the opin-
ion of the Court.—In deciding upon the validity of this plea, it is
necessary to consider the extent of the discharge relied upon, in
connection with the dates of the several transactions. The
release pleaded is broader than the requisitions of the award,
both in the terms used in describing the matters discharged, and
the period to which it extends. The award was that the parties
should release all matters to the date of the award, which was
July 6th. The release is of all matters to the date of the release,
which was the 7th of the same July. And, when we notice that
the award requires all things to be performed forthwith, and that
the releases awarded were not to discharge the duties created by the
award, but only all matters antecedent thereto, it is natural and
reasonable to inquire, why the release given should bear date a
day later than the award, and discharge every thing that *could be
named* up to the date of the releases, unless there was a mutual
performance of the matters and duties required by the award, du-

CALEDONIA,
March,
1831.

Bridgeman
vs.
Eaton.

ring the intervening day, and the parties intended to discharge the award, as well as all prior claims.    This debt against Carter was virtually awarded to the plaintiff ; but the award does not, in terms, create any duty in the defendant concerning it.    If it created any duty by implication, it must have been to deliver over this demand under the word *payment.* If there was such a duty, it existed during the day, in which payments were made.    This release covering that day, and comprising all demands, and that in all varieties of expressions, must be considered as discharging that duty, while it stands on demurrer.    How far this effect might have been prevented by a special replication, presenting facts not known to the court, is not for us now to determine.

A further difficulty presents itself, if we go back to the declaration.    The averments in the declaration show, that the demand against Carter became the property of the plaintiff by force of the award, and he had a right to the immediate possession, to the exclusion of the other partners.    Before the award, the possession of each was the possession of the whole.    After the award, the refusal of the defendant to deliver this demand to the plaintiff might be a conversion, or furnish a ground for the plaintiff to recover its amount in an action of trover ; but we see not how it can be a breach of any covenant contained in this bond.    The taking of cattle, by one of these parties, after they were awarded to another, or making encroachments on the land awarded to that other, would be wrong and furnish cause of action, but would not be a breach of any of these covenants.    It would be acting contrary to the spirit and meaning of the award in one sense—but the action must be brought as for an injury to the plaintiff's property ; not as a hindrance to a vesting of the property in the plaintiff.    If there were sureties to an arbitration bond, it would be hard, were they to be holden, not only that the parties should abide by, and perform, the award, but should ever after deal justly with regard to the property that vested in the opposite party by virtue of such award.

In a suit in trover for this property, or a suit for the money after it was received, this release would be no bar ; for the plaintiff, having a right to the property, can assert that right whenever it is invaded : and till then, this discharge cannot operate against his action.    The Court decide, that the plea is sufficient, and the declaration is insufficient ; and the judgement of the county court is reversed, and judgement rendered for the defendant to recover his costs.

*John Mattocks,* for plaintiff.
*Bell & Cushman,* for defendant.
W